IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VFS US LLC <br> d/b/a VOLVO FINANCIAL SERVICES <br><br> Plaintiff, <br><br> v. <br><br> J&F EXCAVATING, INC. & <br> MICHAEL JOHNSON <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 3:10-00810 <br> ) JUDGE HAYNES <br> ) <br> ) <br> ) <br> ) <br> ) |

MEMORANDUM

Plaintiff, Volvo Financial Services ("VFS"), a Delaware limited liability company, filed this action under 28 U.S.C. § 1332, the diversity statute, against Defendants, J&F Excavating, a Tennessee corporation and Michael Johnson, a Tennessee citizen. Plaintiff's claims are for a deficiency amount owed by the Defendants under a secured promissory note, modification agreement and continuing guaranty.

Before the Court is Plaintiff's motion for summary judgment (Docket Entry No. 12), contending, in sum, that there are not any material fact disputes and under Tennessee law, the parties' contracts establish the Defendants' indebtedness to the Plaintiff. Defendants have not responded to Plaintiff's motion for summary judgment.[1] Under Local Rule 7.01(b), a lack of response is construed to mean there is no opposition. Under Fed. R. Civ. P. 569e), the Court must consider whether an award of summary judgment is "appropriate." The Court, however,

---

[1] Under Local Rule 56.01, the respondent has 21 days to file a response to a motion for summary judgment. The Defendants, who are represented by counsel, failed to do so. A response to VFS's motion for summary judgment, (Docket Entry No. 12) filed November 24, 2010, was due by December 16, 2010.

accepts the undisputed facts in support of Plaintiff's motion for summary judgment. See Guarino v. Brookfield, 980 F.2d 399, 404 (6th Cir. 1992); Local Rule 56.01(g).

For the reasons set forth below, the Court concludes that the parties' contract established the Defendants' indebtedness and Plaintiff's entitlement to the deficiency thereunder. Thus, Plaintiff should be awarded $91,061, plus the agreed upon interest rate of eighteen percent (18%) per annum as well as Plaintiff's attorney's fees and costs as provided in the parties' agreement.

## A. Findings of Fact[2]

J&F Excavating signed a secured promissory note payable to Volvo Financial Services to purchase a truck. (Docket Entry No. 14-1, Secured Promissory Note). The August 31, 2007 note was for a principal sum of $200,685.23 dollars with an interest rate of 4.49% per annum. (Docket Entry No. 14, Plaintiff's Statement of Undisputed Material Facts, at ¶ 1). This required note, Defendant J&F Excavating to make sixty monthly installments of $3,740.47 to satisfy their obligations to Plaintiff. Id. To secure payment under the promissory note, Defendant J&F Excavating executed a security agreement granting Plaintiff a security interest in the truck. Id. at ¶ 2. The collateral for the note was a 2006 Volvo EC240BLC with a 48" Geith Bucket. Id. Plaintiff perfected their security interest by filing a Uniform Commercial Code Financing Statement with the Tennessee Secretary of State. (Docket Entry No. 14-2, UCC Financing Statement).

On or about April 15, 2009, Defendant Michael Johnson executed a continuing guaranty that guaranteed full, complete, prompt payment and performance of the contractual obligations

---

[2] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict. Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Under the applicable law, the Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

of J&F Excavating, Inc., including without limitation all obligations under the secured promissory note. (Docket Entry No. 14-3, Continuing Guaranty). Defendants Johnson and J&F Excavating also entered into a modification agreement with Plaintiff on or about April 15, 2009. (Docket Entry No. 14-4, Modification Agreement). Under this latter agreement, Defendants agreed to make principal and interest payments of 5.11% per annum with three consecutive monthly installments of zero dollars, followed by three consecutive monthly installments of $1,800 and forty four consecutive monthly installments of $3,744.97. (Docket Entry No. 14, Plaintiff's Statement of Undisputed Material Facts, at ¶ 5). All other terms of the original secured promissory note remained in effect. Id.

Under the terms of the promissory note, Defendants agreed that the "failure by any Loan Party to pay when due (i) any amount due by such Loan Party under the Loan Documents and (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or indebtedness of any kind" constitutes an "Event of Default." Id. at ¶ 6. The term "Loan Documents" included both the secured promissory note and continuing guaranty. Id. A "Loan Party" is defined to include both the original borrower and any party that executes a guaranty of any portion of the original borrower's obligations. Id.

Defendant J&F Excavating ultimately defaulted by failing to make timely payments under the secured promissory note and modification agreement. Defendant Michael Johnson also defaulted on his obligations to Plaintiff by failing to make timely payments as required by his continuing guaranty. Id. at ¶¶ 7,8. Following Defendants' default, Plaintiff repossessed the collateral. Id. at ¶ 9. At the time of the default, Defendants' balance under the agreement was $149,184.14. (Docket Entry No. 1-5, Notice of Sale). Plaintiff sold the repossessed collateral at a private sale for $65,000. (Docket Entry No. 14, Plaintiff's Statement of Undisputed Material

Facts, at ¶ 10.) After the proceeds from the sale of the collateral, a deficiency of $91,061.42 remains under the secured promissory note. (Docket Entry No. 1-7, Deficiency Owed).

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Sixth Circuit explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]...must

5

'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added). It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

As a diversity action, state law governs the parties' claims and defenses. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). Plaintiff cites Tennessee law for its contentions, but the secured promissory note provides that North Carolina law governs the parties' rights and obligations. (Docket Entry No. 1-1, Secured Promissory Note at p. 3). Under Tennessee law, where the parties "agree to be bound by the laws of another state," and that "agreement is made in good faith," Deaton v. Vise, 210 S.W.2d 665, 668-669 (Tenn. 1948), then the designated law controls. Id.

8

Although Plaintiff relies on Tennessee law, the Court must apply the governing law agreed to as the "application of the correct law is surely in the interest of justice." Goldstein v. Madison Nat. Bank of Washington, D.C., 807 F.2d 1070, 1072 fn. 5 (D.C. Cir. 1986).

Under North Carolina law, a breach of contract claim requires "the existence of a valid contract and a breach of the terms of that contract." Eli Research, Inc. v. United Communications Group, LLC, 312 F. Supp. 2d 748, 755 (M.D.N.C. 2004) citing Poor v. Hill, 138 N.C.App. 19, 27, 530 S.E.2d 838, 843 (N.C. App. 2000). Here, the secured promissory note and continuing guaranty between Plaintiff and Defendants create enforceable rights and obligations. Defendants failed to meet their obligations under those agreements.

Defendants' breach of those agreements damaged Plaintiff, despite the sale of the collateral. Under North Carolina law, "the injured party is entitled to the pecuniary difference between his position upon breach of the contract and what it would have been, had the contract been performed." Troitino v. Goodman, 225 N.C. 406, 413, 35 S.E.2d 277, 283 (N.C. 1945). Under the agreements, Plaintiff was entitled $200,685.23, plus interest. After payments and Defendant's default on the contracts and the sale of collateral, a deficiency of $91,061.42 remains.

In the event of default, the parties' agreement specifies two potential interest rates to be paid:

> All Obligations not paid when due shall bear interest from the due date or the judgment date, as applicable, until paid at a rate (the "Default rate) which is the lesser of eighteen percent per annum or the maximum rate permitted under applicable law.

(Docket Entry No. 1-1, Secured Promissory Note, at p.2).

"North Carolina limits the permissible interest rates on small commercial loans but does not restrict the maximum interest rates that may be charged on larger loans. With respect to such

larger commercial loans the parties are free to bargain for any rate, whether fixed or variable, upon which they agree." West Raleigh Group v. Massachusetts Mut. Life Ins. Co., 809 F. Supp. 384, 389 (E.D.N.C. 1992). For "the maximum rate permitted," the relevant North Carolina statute provides:

> a) Except as otherwise provided in this Chapter or other applicable law, the parties to a loan, purchase money loan, advance, commitment for a loan or forbearance other than a credit card, open-end, or similar loan may contract in writing for the payment of interest not in excess of:
>
> (1) Where the principal amount is twenty-five thousand dollars ($25,000) or less, the rate set under subsection (c) of this section; or
>
> (2) Any rate agreed upon by the parties where the principal amount is more than twenty-five thousand dollars ($25,000).

N.C.G.S.A. § 24-1.1.

Given that principal on Defendants' loan exceeds $25,000 and the note's citation to the rate of eighteen percent (18%) per annum, the Court concludes that 18% interest rate note governs this default.

In addition to interest, the parties' promissory note provides for an award of attorney fees and costs for enforcement of the note.

> Borrower agrees to pay on demand all reasonable external and internal costs, expenses and fees (including reasonable attorneys' fees and expense) of Lender in enforcing the Loan Documents and the rights and remedies of the Lender under the Loan Documents and applicable law, regardless of whether any legal action or proceeding is instigated. Such costs, expenses, and fees shall constitute an obligation under the Loan Documents.

(Docket Entry No. 1-1, Secured Promissory Note, at p. 3.)

"Section 6-21.2 of the North Carolina General Statutes authorizes the award of attorney's fees in cases of breach of contract where there is "evidence of indebtedness," and presumes 15% of the outstanding balance as the reasonable fee." Cartrette v. Farthing, 2008 WL 5220211, at *2

(E.D. N.C. 2008); N.C.G.S.A § 6-21.2. "Evidence of indebtedness signifies a written agreement or acknowledgment of debt, such as *a promissory note* or conditional sales contract, which is executed and signed by the party obligated under the terms of the instrument." Id. at *2, fn. 2. (emphasis in original). The Court thus awards Plaintiff fifteen percent of the outstanding balance in attorney's fees. Deveraux Properties, Inc. v. BBM & W, Inc., 114 N.C. App. 621, 626, 442. S.W.2d 555, 557-558 (N.C. App. 1994).

For these reasons, the Court concludes that Plaintiff's motion for summary judgment should be granted. Based upon the parties' agreements and North Carolina law, Plaintiff should be awarded the deficiency of $91,061.42, plus interest at the agreed rate of eighteen percent (18%) per annum, as well as the Plaintiff's attorney's fees, in the amount of fifteen percent (15%) of the outstanding balance and Plaintiff's costs in this action.

An appropriate order is filed herewith.

**ENTERED** this the 17th day of February, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge